Terry Reis KENNEDY,

v.

**ROMAN CATHOLIC DIOCESE OF BURLINGTON, VERMONT, INC.**

Civil No. 93–CV–182.

United States District Court, D. Vermont.

April 5, 1996.

Jerome Frederick O'Neill, Burlington, VT, for Plaintiff.

David L. Cleary, Rutland, VT, for Defendant.

## RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

(paper 121)

MURTHA, Chief Judge.

### I.  Background

Plaintiff Terry Reis Kennedy alleges her parish priest, Father Benjamin Wysolmerski, abused her on repeated occasions between 1952 and 1962.  She claims, *inter alia*, that the Roman Catholic Diocese of Burlington, Vermont (hereinafter "the Diocese") is liable for the abuse under the following theories:

respondeat superior (Count III); negligence in hiring Father Wysolmerski (Count IV); negligent failure to supervise Father Wysolmerski (Count V); promoting an atmosphere in which her sexual abuse could take place (Count VI); failure to provide counseling made necessary as a result of Father Wysolmerski's alleged sexual abuse (Count VII); and, reckless disregard of plaintiff's abuse, resulting in the infliction of extreme emotional distress (Count VIII).

The Diocese has moved for summary judgment. Solely for the purpose of deciding this motion, the Diocese concedes that Father Wysolmerski sexually abused the plaintiff.

The gravamen of defendant's motion is that the record is devoid of factual support for plaintiff's claims against the Diocese. Plaintiff's response provides only one "fact" in support of her contention that the Diocese knew or should have known of Father Wysolmerski's misconduct. Plaintiff states: "At one point [Father Wysolmerski] called her into his office to show her a letter from Bishop Ryan addressed to him telling him that the Bishop had received complaints that Father Wysolmerski was spending too much time with the Reis family and with their daughter Terry in particular." Plaintiff's Statement of Material Facts (paper 128) at para. 46 (citing Plaintiff's Deposition at 36). Without adequate support, she also asserts that the Diocese's failure to provide discovery raises genuine issues of material fact for a jury to consider. *See* Plaintiff's Opposition to Defendant's Motion for Summary Judgment (paper 127) at 9; *but see* Fed.R.Civ.P. 56(f)(A party must support her claim of lack of discovery with an affidavit.); *Hudson River Sloop Clearwater, Inc. v. Department of Navy,* 891 F.2d 414, 422 (3d Cir.1989) (Affidavit must contain, *inter alia,* a statement of how missing discovery is reasonably expected to create a genuine issue of material fact.); *Armotek Industries, Inc. v. Freedman,* 790 F.Supp. 383, 395 (D.Conn.1992) (A request for discovery in a memorandum is not a substitute for Rule 56(f) affidavit.)

## II. Discussion

■ As the party moving for summary judgment, the Diocese has the initial burden of informing the Court of the basis for its motion and of identifying those parts of the record which it believes demonstrate the absence of a genuine issue of material fact. *See Latimer v. Smithkline and French Laboratories,* 919 F.2d 301, 303 (5th Cir.1990) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Where, as here, a motion for summary judgment is supported by affidavits or other documentary evidence, the party opposing that motion must set forth specific facts which show there is a genuine, material issue for trial. *See King Service, Inc. v. Gulf Oil Corp.,* 834 F.2d 290, 295 (2d Cir.1987). Accordingly, the plaintiff must come forward with enough evidence to support a verdict in her favor. She cannot defeat the defendant's motion merely by presenting a metaphysical doubt, conjecture or surmise concerning the facts. *See Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *Borthwick v. First Georgetown Securities, Inc.,* 892 F.2d 178, 181 (2d Cir.1989). Only disputes over facts which might affect the outcome of the suit under the governing law preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

■ Given this standard, it is clear that the plaintiff has not met her burden of controverting the Diocese's motion. To hold an employer responsible for an employee's acts, the Court must find "the act was done in furtherance of the master's business and within the scope of the servant's employment." *McHugh v. University of Vermont,* 758 F.Supp. 945, 951 (D.Vt.1991) (quotations omitted), *aff'd,* 966 F.2d 67 (2d Cir.1992). On the instant record, the Court finds no reasonable jury could conclude that Father Wysolmerski's sexual misconduct was either within the scope of his employment or in furtherance of the Diocese's business. *See, e.g., Tichenor v. Roman Catholic Church of Archdiocese of New Orleans,* 32 F.3d 953, 960 (5th Cir.1994) ("It would be hard to imagine a more difficult argument than that Cinel's illicit sexual pursuits were somehow related to his duties as a priest. . . .") The plaintiff has

presented no factual support for her claim that the Diocese is liable under the theory of respondeat superior as alleged in Count III.

■ Similarly, the plaintiff has not met her burden of demonstrating the existence of facts which preclude the entry of summary judgment on her negligence claims set forth in Counts IV through VII. "It is fundamental in the law of negligence that liability will be incurred if the relation of the parties is such that the person sought to be charged owes a duty of care to the person injured." *Thurber v. Russ Smith, Inc.,* 128 Vt. 216, 260 A.2d 390, 392 (1969). Thus, to recover in a negligence action, a plaintiff must establish the existence of a legally-cognizable duty on the part of the defendant. *See, e.g., Langle v. Kurkul,* 146 Vt. 513, 510 A.2d 1301, 1304 (1986).

■ Generally, there is no duty to control the conduct of another to protect a third person from harm. An exception to this rule may arise where there is a special relationship between two persons which gives one control over the actions of another. *See Poplaski v. Lamphere,* 152 Vt. 251, 565 A.2d 1326, 1329 (1989) (citations omitted); *Peck v. Counseling Service of Addison County, Inc.,* 146 Vt. 61, 499 A.2d 422, 425 (1985). However, foreseeability of risk remains a key consideration. *See Langle v. Kurkul,* 510 A.2d at 1305; *Rivers v. State,* 133 Vt. 11, 14, 328 A.2d 398, 400 (1974); *see also* Restatement (Second) Torts, § 317(b)(ii) (A master is under a duty to exercise reasonable care so to control his servant if he "knows or should know of the necessity and opportunity for exercising such control.") The fact that the Diocese may control some activities of its priests does not, of itself, impose a legal duty to protect the plaintiff absent some sort of notice that Father Wysolmerski might engage in the volitional criminal acts at issue. *Cf. Smith v. Day,* 148 Vt. 595, 538 A.2d 157 (1987); *Peck,* 499 A.2d at 427.

■ The plaintiff has failed to produce evidence which suggests that, at any time, the Diocese knew or should have known of Father Wysolmerski's propensity to engage in wrongful sexual activity. *Cf. Barquin v. Roman Catholic Diocese of Burlington, Vermont, Inc.,* 839 F.Supp. 275, 282 (D.Vt.1993) (Despite First Amendment concerns, "if hiring was done with knowledge that a prospective employee had perverted sexual proclivities, the institution might well be held accountable. . . .") In this regard, the plaintiff's indication that certain individuals on one unspecified occasion complained that he spent too much time with plaintiff and her family is not sufficient to support a verdict on her claim of extended sexual abuse. *Cf. Clements v. County of Nassau,* 835 F.2d 1000, 1005 (2d Cir.1987) ("The state of mind exception [to granting summary judgment] is appropriate only where solid circumstantial evidence exists to prove plaintiff's case.")

■ Finally, to prevail on a claim for intentional infliction of emotional distress, "plaintiff must demonstrate outrageous conduct, done intentionally or with reckless disregard of the probability of causing emotional distress, resulting in the suffering of extreme emotional distress, actually or proximately caused by the outrageous conduct." *Fellheimer v. Middlebury College,* 869 F.Supp. 238, 247 (D.Vt.1994) (citation and quotation omitted). Assuming plaintiff's allegations as true, the record does not disclose conduct which supports the imposition of liability on the Diocese for the infliction of emotional distress as alleged in Count VIII.

The Diocese's Motion for Summary Judgment is GRANTED.

SO ORDERED.